### In re JUDSON et al.

#### (District Court, S. D. New York.  May 12, 1911.)

1. BANKRUPTCY (§ 143*)—ASSETS—INTEREST IN LIFE INSURANCE POLICY—ASSIGNMENT.

Bankruptcy proceedings having been instituted against a firm consisting of father and son, the father committed suicide prior to adjudication, leaving certain life policies, payable to his wife and children, share and share alike. He left him surviving a wife and three children, one of whom was a son also bankrupt. *Held*, that the son had an interest in such policies prior to his father's death which constituted property he was bound to schedule, and, being transferable by the son as a chose in action, such interest passed to the trustee in bankruptcy under Bankrupt Act July 1, 1898, c. 541, § 70a, subd. 5, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), vesting a trustee with the bankrupt's title to all property which, prior to the filing of the petition, he could by any means have transferred; the policies not being within the proviso of such section relating to insurance policies having a cash surrender value payable to the bankrupt, his estate, or personal representatives.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 143.*]

2. BANKRUPTCY (§ 138*)—INSURANCE POLICIES—INTEREST TO BANKRUPT.

Where a deceased bankrupt had no valuable interest in certain policies of his life not voided by suicide, he having borrowed beyond his interest

in all of them, the loans being admittedly valid, the bankrupt's executors and not his trustee were entitled to the proceeds of such policies in excess of the liens for loans held by the insurance company.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 138.*]

3. BANKRUPTCY (§ 138*)—INSURANCE—RETURN PREMIUM.

Where, on a bankrupt's suicide, certain policies of insurance on his life became void, and the insurance companies thereupon returned premiums paid thereon, such money was a refund of the bankrupt's own funds, and belonged to his trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 138.*]

In Bankruptcy. In the matter of the bankruptcy proceedings of Alfred M. Judson and others, individually and trading as Judson & Judson. Proceedings to determine the rights to the proceeds of certain policies on the life of Alfred M. Judson, deceased.

An involuntary petition in bankruptcy was filed against the above-named firm and the individual members thereof on December 17, 1910. A subpoena was issued on the petition but no service ever effected. On December 23. 1910, Alfred M. Judson, the senior member of the firm, and his son Charles Y. Judson entered a notice of appearance for themselves and for the copartnership. The only other partner entered his individual appearance on January 6, 1911, and on January 9th following the firm and all its members were duly adjudicated bankrupts.

In the meantime Alfred M. Judson committed suicide on January 4, 1911. On February 9th following a trustee was elected and duly qualified.

Before the filing of the involuntary petition and continuously thereafter until his death the life of Alfred M. Judson was insured as follows:

(a) By policies aggregating $15,000 payable directly to his wife and children share and share alike. He left him surviving a widow and three children, one of whom is the bankrupt Charles Y. Judson, whose share in said insurance is $3,766.47.

(b) By a policy for $10,000 payable to the insured's executors, administrators, or assigns. This policy had no surrender value, and became void by the suicide of the insured bankrupt.

(c) By two policies aggregating $6,000 payable to the bankrupt, his executors, administrators, or assigns. The surrender value of these policies (at all times above mentioned) was $63.80, and they were not avoided by suicide. but were subject to loans aggregating $2,550 and interest.

(d) By a policy for $10,000 payable to the bankrupt, his executors, administrators, or assigns, which policy was not avoided by suicide, was subject to a loan for $5,240, and had a surrender value of $5,030.

The trustee has received from the insurers Charles Y. Judson's share of the policies payable directly to the wife and children, viz., $3,766.40; also, the net proceeds of the $6,000 of insurance above mentioned, viz., $3,462.42; also, the net proceeds of the $10,000 policy not voided by suicide, namely, $5,212.72; and from the insurer under the voided $10,000 policy he obtained a rebate of premiums paid in advance of $808.50. He thus received all told $9,483.64, on policies whose aggregate surrender value at the time petition was filed was $5,093.80, but on which the bankrupt owed more than that amount.

The amounts thus received by the trustee were paid without prejudice, and there are now filed two petitions: (a) One by Charles Y. Judson, claiming as his the $3,766.47 to which he plainly would have been entitled if at the time of his father's decease a petition in bankruptcy had not been pending against him, and he had not been subsequently adjudicated; and (b) one by the executor of Alfred M. Judson, who claims the difference between the total recovery on the policies covering bankrupt's life and payable to his executor, less the surrender value thereof, or (as alleged) $9,419.84.

The loans aforesaid were made by the insurers and on the policies as security.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Ball & Ludlow, for petitioners.
Philbin, Beekman & Menken, for trustee.

HOUGH, District Judge (after stating the facts as above). [1] The right of Charles Y. Judson to receive as his own the money asked for is based on the following assertion: He *acquired* the proceeds of the insurance maintained by his father for his wife and children before adjudication and after petition filed. The legal proposition said to justify this assertion is summed up in the syllabus of Sibley v. Nason, 22 Am. Bankr. Rep. 712, 196 Mass. 125, 81 N. E. 887, 12 L. R. A. (N. S.) 1173, 124 Am. St. Rep. 520:

"Under the bankruptcy act of 1898 property *acquired* by a bankrupt between the date of the filing of the petition and the adjudication does not pass to the trustee."

See, also, In re Harris, 2 Am. Bankr. Rep. 359; In re Pease, 4 Am. Bankr. Rep. 578; In re Elmira Steel Co., 5 Am. Bankr. Rep. 487.

It is not necessary to dispute or discuss this doctrine; if it be accepted as correct, the inquiry remains: What property did Charles Y. Judson have prior to petition filed on December 17, 1910?

The papers in this case show no power of revocation nor any reserved right to change beneficiaries existing in the father in respect of the policies made payable to wife and children. It may be inferred, or held as matter of common knowledge, that said policies would have lapsed if the insured had neglected to pay the premiums; but subject only to this contingency the language of Washington Central Bank v. Hume, 128 U. S. at page 206, 9 Sup. Ct. at page 44 (32 L. Ed. 370), applies:

"We think it cannot be doubted that in the instance of contracts of insurance with a wife or children, or both, upon their insurable interest in the life of the husband or father, the latter, while they are living, can exercise no power of disposition over the same without their consent, nor has he any interest therein of which he can avail himself, nor upon his death have his personal representatives or his creditors any interest in the proceeds of such contracts which belong to the beneficiaries to whom they are payable."

Where a policy ran to a wife if she survived her husband, and in the event of her predecease then to him or his personal representatives, it was held that:

"Subject to such contingent, interest in (the husband) the policies and the money which became due under them belonged to (the wife), and it was beyond his power to transfer them to any other person or to surrender them." In re Holden, 113 Fed. 143, 51 C. C. A. 99 (reversed on another point 198 U. S. 202, 25 Sup. Ct. 656, 49 L. Ed. 1018).

Again:

"A policy taken out by the insured on his own life and expressed to be for the benefit of his wife is, * * * in the absence of any statutory provision, in the nature of an executory trust for her benefit of which she could not be deprived without her consent." Boyden v. Massachusetts, etc., Life Ins. Co., 153 Mass. 544, 27 N. E. 669.

While in Garner v. Germania Life Ins. Co., 110 N. Y. 269, 18 N. E. 131 (1 L. R. A. 256), it is said that the beneficiaries of a policy of insurance, being the children of the insured, have "a vested interest

in the policy * * * measured and represented by its surrender value."

It follows that at all times during the continuance of these policies, and therefore down to the time petition was filed against him, Charles Y. Judson had a vested interest in the policies which produced the money now petitioned for; and that such interest should be scheduled was held in Re Blalock (D. C.) 118 Fed. 681, a case where the bankrupt had exactly the same species of interest as had the petitioner here.

Since, therefore, petitioner had an interest, and it should have been scheduled, then such interest was property, and the remaining inquiries are how that property is measured and whether the trustee became vested therewith on adjudication.

The answer to these inquiries depends upon section 70A, subd. 5, which declares that the trustee shall become vested by operation of law with the title of the bankrupt as of the date of adjudication to all "property which prior to the filing of the petition he could by any means have transferred." The proviso then following and relating to insurance policies only covers policies which have "a cash surrender value payable to (the bankrupt), his estate or personal representatives."

The petitioning bankrupt, however, had no insurance policy; he had an interest in an insurance policy on the life of another person, which is quite a different thing. Nor, so far as the papers submitted disclose, did the policy itself have any cash (or other) surrender value payable to Charles Y. Judson, and indeed there could be none in the very nature of the insurance because he did not own the policy, even though he owned a vested interest therein. Consequently the proviso of section 70 does not apply to him, nor to the kind of property represented by an interest such as his.

Before reaching the query whether petitioner's interest was transferable, there must be noticed a distinction sought to be drawn between the interest of the petitioner and the fruits of that interest, i. e., the moneys paid on the policy. No such distinction is tenable, for one who has an interest in property, even though contingent, owns not only the contingency but everything that may flow therefrom. He that owns a tree owns the fruit thereof. Thus, if a petition were filed against one having goods on warehouse receipt, the warehouseman obtaining insurance for the benefit of his customers, could it be said that, if the goods were destroyed after petition filed and before adjudication, the proceeds of the insurance would not flow to the trustee; it being admitted that a transfer of the warehouse receipt by the alleged bankrupt would have carried to the grantee the proceeds of the warehouseman's insurance? The interest of the petitioner in the policies in question and the proceeds of that interest are in law the same thing unless the statute draws a distinction. There being no surrender value payable to Charles Y. Judson, neither his interest nor the proceeds thereof are within the proviso of the act, and if transferable must pass to his trustee.

188 F.—45

On the question of transferability, the view most favorable to the petitioner is to regard his interest in the policy on his father's life as a chose in action.

Under Personal Property Law of New York (Consol. Laws 1909, c. 41) § 41, it is not seen how the assignability or transferability of such an interest can be doubted. Yet it was early held, in Wheeler v. Wheeler, 9 Cow. (N. Y.) 34, that even at law it was sufficient to grant to the assignee of a chose in action a power coupled with an interest, while in 1851 it was asserted by the Court of Appeals of this state that:

"All choses in action embracing demands which are considered matters of property or estate are now assignable either at law or in equity. Nothing is excluded but mere personal torts which die with the party." Hoyt v. Thompson, 5 N. Y. at page 347.

Maryland has a statute certainly no wider than the above-quoted section of the personal property law, and under it Hewlett v. Home for Incurables, 74 Md. 354, 24 Atl. 324, 17 L. R. A. 447, is a case exactly like this.

This matter being in bankruptcy, it is enough to establish the assignability of choses in action in equity, and for this see Peugh v. Porter, 112 U. S. 737, 5 Sup. Ct. 361, 28 L. Ed. 859. For these reasons the petition of Charles Y. Judson is denied.

[2] The petition of the executor of Alfred M. Judson must be decided in conformity with the doctrine clearly laid down in Burlingham v. Crouse, 181 Fed. 479, 104 C. C. A. 227.

The situation of the policies there considered was identical with those of the policies here before the court and not voided by suicide. There, as here, the policies had a certain surrender value to and beyond which the insured had borrowed from the companies themselves.

The doctrine of the case cited is that it is the object of the bankruptcy act "to place in the hands of the trustee for distribution among the creditors every dollar which the bankrupt could collect; therefore, if he has a policy on which money could be collected by surrendering it, he must turn over such policy to the trustee, who may thereupon surrender and collect."

It is true that too great stress can be laid upon the statutory words "cash surrender value," for the Appellate Court for this circuit has said that:

"If a Tontine policy (which has no cash surrender value) have but a day to run after the adjudication in bankruptcy, the trustee should not be deprived of it because it has no technical cash surrender value." In re Coleman, 14 Am. Bankr. Rep. 462, 136 Fed. 819, 69 C. C. A. 497.

This case is quite in accord with Gould v. New York Life Ins. Co. (D. C.) 132 Fed. at page 930, where "real cash value" is taken as the test even though there be no cash surrender value in the sense in which that phrase is commonly used in insurance matters. And this doctrine has been carried so far that a trustee has been authorized to offer for sale a policy of insurance having no cash surrender value because the bankrupt had some interest therein even though the act of sale (unless some purchaser having an insurable interest came forward)

would destroy the property which it is the object of the bankruptcy act to preserve for some one. In re Hettling, 175 Fed. 65, 99 C. C. A. 87. And see In re White, 174 Fed. 333, 9 C. C. A. 205, 26 L. R. A. (N. S.) 451.

This line of decisions, however, is not important here, because it is not shown or suggested that the deceased bankrupt had any valuable interest in those policies not voided by suicide; he had borrowed beyond his interest in all of them, and the loans so created are admittedly valid. Therefore, in conformity with Burlingham v. Crouse, supra, the trustee can take nothing because the bankrupt could get nothing.

[3] There remains for consideration the $808.50 recovered by the trustee for unearned premiums on the voided policy. This money was obviously returned because the insured was dead and the policy died with him; it was a species of surrender of the policy. If it was a voluntary payment by the insurer, it was made to the trustee; if it was a payment in pursuance of the contract, the money paid was not insurance money. The object of the statute is to preserve to beneficiaries, legatees, or next of kin moneys which flow from the fulfillment of the insurance contract. This money comes from no such source; it is a refund of the bankrupt's own money, and under no view can it inure to any other person than the trustee who succeeds to the bankrupt's property.

The executor petitioner may therefore take an order for the return of the net proceeds of the unvoided policies payable to the bankrupt's executors, viz., $8,675.14