PARTRIDGE v. ANDREWS.

(Circuit Court of Appeals, Third Circuit.   November 7, 1911.)

No. 16 (1,484).

1. BANKRUPTCY (§ 143*)—PROPERTY PASSING TO TRUSTEE—LIFE INSURANCE POLICIES.

Under Bankr. Act July 1, 1898, c. 541, § 70a, subd. 5, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), which provides that a trustee shall be vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt to property which prior to the filing of the petition he could by any means have transferred, provided that, "when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate or personal representatives," he may, by paying to the trustee such surrender value, retain the policy free from the claims of the creditors, a life insurance policy payable to the bankrupt or his estate vests in the trustee, whether or not it has a cash surrender value; the right to redeem it in such case being a personal privilege conferred on the bankrupt by the proviso.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 143.*]

2. BANKRUPTCY (§ 143*)—PROPERTY PASSING TO TRUSTEE—LIFE INSURANCE POLICIES.

Where life insurance policies, held by a bankrupt at the time of the filing of the petition against him and payable to his estate, had a cash surrender value, his death before the adjudication, which matured the policies, extinguished such surrender value, and on the appointment of a trustee such policies passed to him in their condition at the date of adjudication as matured contracts and assets of the estate.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 143.*]

Buffington, Circuit Judge, dissenting.

Petition for Revision of Proceedings of the District Court of the United States for the District of New Jersey, in Bankruptcy.

In the matter of Benajah D. Andrews, bankrupt. On petition of Harvey K. Partridge, trustee, to review an order adjudging the executrix of the deceased bankrupt entitled to proceeds of certain life insurance policies. Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

John D. McMullin and Henry F. Stockwell (Bleakly & Stockwell, on the brief), for petitioner.

Samuel H. Richards (French & Richards, on the brief), for respondent.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. This is a petition for the revision in matter of law of an order of the District Court of the United States for the District of New Jersey, in bankruptcy. The question for revision will appear from the facts stated in the petition and answer of the respondent and the provisions of the bankrupt law applicable thereto. The material facts are as follows:

February 3, 1910, an involuntary petition in bankruptcy was filed against Andrews, an alleged bankrupt, in the New Jersey district, upon whom process was duly served. February 15, 1910, Andrews died, leaving a will, under which his widow, the respondent, qualified as his executrix. April 4, 1910, Andrews was adjudicated a bankrupt. April 28, 1910, the petitioner was elected trustee in bankruptcy, and qualified.

At the time of the filing of said involuntary petition in bankruptcy against the said Andrews, and at the time of his death, there were outstanding on his life, two policies of insurance—one in the New England Mutual Life Insurance Company, dated the 18th day of November, 1907, for the sum of $10,000, payable upon the death of the insured to his executors, administrators or assigns; the other, a policy of insurance in the Reserve Loan Life Insurance Company, dated January 29, 1909, for $5,000, payable on the death of the said Andrews to his estate, provided the policy should not have been assigned, etc. On the 23d day of January, 1909, the said bankrupt made a written assignment of his policy in the New England Mutual Life Insurance Company to the Moorestown National Bank, as security for the payment of money loaned to the said bankrupt by the said bank. On the death of the said bankrupt, the due amount of said policy, to wit, the sum of $9,752.62, was paid to the said Moorestown National Bank, as assignee of said policy, by the New England Mutual Life Insurance Company, and after deducting the bankrupt's said indebtedness, the said bank paid over into the custody of the petitioner, as trustee in bankruptcy for the said Andrews, the sum of $5,271.23. The sum of $4,710, being the amount due on said policy in the Reserve Loan Life Insurance Company, less an unpaid premium of $290, was also paid over by that insurance company into the custody of the petitioner, as trustee in bankruptcy. Each of these payments was made to the trustee under a written stipulation with the said Hannah L. Andrews, executrix of the said bankrupt, and the trustee, that the said money should not be disposed of by the petitioner in any way until a court of competent jurisdiction should have decided to whom the said money was due.

November 19, 1910, the trustee filed in the District Court for the district of New Jersey a petition, praying that the net proceeds of said policies be decreed to be paid to him. For the executrix, as re-

spondent, an answer was filed and signed by her attorneys, Joseph Kaighn and French & Richards, in which they say:

"This respondent alleges and declares that the policies in said petition of said trustee mentioned had no cash surrender value at the time the petition in bankruptcy was filed, and the trustee in bankruptcy never acquired any estate or interest in said policies, or either of them."

Accompanying this answer is an affidavit dated December 23, 1910, by Joseph Kaighn, one of the counsel who signed it, to the effect that he had seen a letter signed by Henry F. Stockwell, stating that the companies had not informed the trustee of the bankrupt of any cash surrender value of the policies of insurance mentioned in the foregoing answer at the time the petition was filed.

"And deponent further says that he, this deponent, has made efforts to learn from the companies the cash surrender value of each of said policies, and is informed by telegram and letter from said companies, that neither of said policies had any cash surrender value on February 3, 1910" (the date of the filing of the petition).

After hearing, an order was made by the judge of the court below, as follows:

"This matter coming on to be heard on petition and affidavits and exhibits attached, order to show cause, answer, and affidavits attached, and letters dated December 23, 1910, from each of the insurance companies, offered and, by consent, admitted in evidence, from which it appears that at the date of filing the petition in bankruptcy, the policy in the New England Mutual Life Insurance Company had a cash surrender value of $14.93, and was at that time pledged * * * for a loan of $4,481.39, an indebtedness greater than its surrender value, and that at the date of filing the petition in bankruptcy, the policy in Reserve Loan Life Insurance Company had a cash surrender value of $100, and the court, being of opinion that the trustee in bankruptcy acquired no greater estate or interest in these policies than their cash surrender value at the date of filing the petition in bankruptcy."

It was ordered and adjudged that the said trustee—

"is entitled to the sum of $100, and the remainder of such net proceeds is no part of the bankrupt estate."

As no opinion was filed with this order, we have not the benefit of the reasons of the learned judge for making the same. The petition for revision now before us states that:

"It was agreed upon the hearing that the surrender value of the policies in question, at the time of the filing of the petition in bankruptcy, was $114.93, and no facts were in dispute. That the question of law involved is: As of what date must the surrender value of a policy be ascertained under the proviso 70a—5 of the bankrupt act, whether as of the date of the filing of the petition, or as of the date of the adjudication."

Section 70a of the bankrupt act reads as follows:

"Sec. 70. Title to Property. a. The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all (1) documents relating to his property; (2) interests in patents, patent rights, copyrights, and trade-marks; (3) powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person; (4) property transferred by him

in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him: Provided, that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets," etc.

Notwithstanding the fact that the policy in the New England Mutual Life Insurance Company had been assigned as security for a loan largely in excess of any surrender value at any time during the bankruptcy proceedings and the statement made by the respondent, in answer to the petition of the trustee, as above recited, that neither of said policies had any cash surrender value at the time the petition in bankruptcy was filed, it appears, from the preamble to the order made by the learned judge of the court below, that from certain exhibits and affidavits admitted in evidence by consent (but not appearing in the record) to have been found as a fact by the court, that at the date of the filing the petition in bankruptcy, the New England Mutual Life Insurance Company had a cash surrender value of $14.93, and that the policy in the Reserve Loan Life Insurance Company had a cash surrender value of $100. Upon this finding of fact, it is contended on behalf of the executrix of the bankrupt, that the only interest in relation to these policies that passed to the trustee, was this surrender value, and presumably that the executrix would have the right to these matured policies, and the money due under them, upon payment of that sum to the trustee, under the proviso of subdivision 5 of section 70a of the bankrupt act.

Looking at the language of the act alone, without reference to the somewhat conflicting decisions cited by counsel on either side, it would seem that the policies issued to the bankrupt in this case, and his title to the same, which he held at the time of the filing of the petition against him, passed to the trustee by operation of law, upon his appointment and qualification after the adjudication. The title to these policies was the title of the bankrupt at the time of the filing of the petition; and the death of the bankrupt before adjudication, as it did not, owing to the provision of section 8 of the act, abate the proceedings in bankruptcy begun by the petition, did not affect the title thus vested in him by operation of law. The policies were still property of real value of the bankrupt at the time of filing the petition, and they continued to be property of real value after the death of the bankrupt, and passed as such to the trustee of the bankrupt estate. Their value during the bankrupt's life, and at the time of the filing of the petition, depended largely upon the happening of a contingency, upon which a debt became due to the estate of the bankrupt. The debt grew out of the contracts set forth in the policies, and as these contracts could undoubtedly have been transferred or assigned absolutely by the bankrupt at the time the petition was filed, they were property both be-

fore and after maturity, which would pass to the trustee under subdivision 5 of 70a of the bankrupt act.

Section 1, subsec. 25. of the bankrupt act provides that:

"'Transfer' shall include the sale and every other different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift, or security."

It seems impossible under this definition of the word to hold otherwise than that, under subsection 5 of section 70a, these policies became vested in the trustee, as of the date of the adjudication, as "property which prior to the filing of the petition he [the bankrupt] could by any means have transferred." In re Barrow (D. C.) 98 Fed. 582, 3 Am. Bankr. Rep. 414, 416.

In Burlingham v. Crouse, 181 Fed. 479, 104 C. C. A. 227, a case in some respects relied upon by the appellee, Judge Lacombe, in writing the opinion of the Circuit Court of Appeals for the Second Circuit, says:

"In some instances, the policy is made payable to insured's estate, so that he retains the power to dispose of its proceeds at will. So, too, sometimes by express stipulation in the contract (as in this case), sometimes by practice of the company, the privilege is given to the insured to surrender his policy at any time (usually after several premiums have been paid) and receive a fixed sum of money in exchange. Such sum is called the 'cash surrender value' of the policy. Unless such a policy passed to the trustee, the bankrupt could surrender it and himself collect the cash."

This brings us to consider the proviso contained in subsection 5, already quoted as part of section 70a. This proviso clearly assumes that the property in the policy has vested in the trustee, but where there is a surrender value to a policy held by the bankrupt, and payable to his estate, the law gives him personal privilege within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company, to pay or secure to the trustee the sum so ascertained and stated, and continue to hold such policy free from the claims of creditors participating in the distribution of the estate. He may or may not exercise this privilege. If he does not, the policy passes to the trustee as assets. The proviso does not expressly provide for a case where the insured bankrupt dies between the filing of the petition and the adjudication of bankruptcy, but it clearly contemplates that in every other situation than where the bankrupt exercises his privilege of paying the surrender value when ascertained, the policy shall remain vested in the trustee as part of the assets of the estate.

This view is well stated by the Circuit Court of Appeals for the Second Circuit, In re Welling, 113 Fed. 189, 193, 51 C. C. A. 151, 155:

"By the terms of the policy he was entitled to receive at the end of the tontine period the cash payment stipulated in the contract. That is a vested contract right, contingent only upon his surviving the tontine period. The right is valuable, increasing in value with each successive payment of premium. The policy, technically, had not a 'surrender value,' within the meaning of the proviso; but it had an actual value, and that valuable right was right of property existing in the bankrupt. It is the plain provision of the bankruptcy law that all the estate of the bankrupt shall by operation of law, be vested in the trustee, save such as is specifically excepted by the provisions

of the bankruptcy law, or by the law of the domicile of the bankrupt. The language of the provision is comprehensive. Subdivision 5 of section 70a declares that there shall be thus vested in the trustee 'property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him.' Then follows the proviso which we have considered. It is clear that this proviso merely defines a certain class of insurance which may be excepted and exempted, by the action of the bankrupt and upon the conditions stated, from the general property which by the law is vested in the trustee. In other words the proviso is in the nature of a privilege to the debtor to retain such specified insurance upon yielding to the trustee the cash surrender value of the policy at the time of adjudication. All other property of the bankrupt, including all insurance owned by him, which does not fall within the provisions of the proviso, passes to the trustee. The statute cannot legitimately be construed to mean that a policy does not vest in the trustee except it have a cash surrender value, and that such may be rescued by the bankrupt upon the terms stated. The meaning of the provision is clear,—that all the property of the bankrupt, except that specified in the proviso, shall be vested in the trustee, and that also shall pass unless the bankrupt avail himself of the privilege granted him by the law. The contract in question gives to the bankrupt the right to receive at a certain date a specified sum of money, contingent upon his surviving to that date. This is a vested right of property existing in the bankrupt, which passes to the trustee. It is a property right which he could have transferred, and it falls within the comprehensive language of the section which vests title in the trustee."

This construction of the proviso in section 70a was followed by the Circuit Court of Appeals of the Eighth Circuit in the case of In re Orear, 178 Fed. 632, 102 C. C. A. 78, 30 L. R. A. (N. S.) 990. In that case, policies held by the bankrupt at the time the petition was filed, provided for the payment of cash values after the payment of three or more annual premiums, upon surrender of the policies, and provided further that the insured might change the beneficiary under the policy. It was held that this insurance passed to the trustee by the adjudication in bankruptcy.

[1] There is some confusion as to the inference to be drawn from certain dicta of the courts, to the effect that it is the surrender value existing at the time of the filing of the petition, that passes to the trustee. But in a line of well-considered cases, it is held, or assumed, that it is the policy on the life of the bankrupt, payable to his estate, whether having a surrender value or not, that passes to the trustee, as of the date of the adjudication, under section 70a, as property which the bankrupt could have transferred prior to the filing of the petition, and not merely the surrender value thereof. It is a personal privilege that is conferred upon the bankrupt by the proviso in this section of the act. Unless it is exercised, by the express language of the proviso, the policy, with all rights appertaining thereto, passes to the trustee as assets of the bankrupt's estate. As said by the court in Re Welling, supra:

"The term 'surrender value' has a defined and legal meaning, viz., the cash value—ascertainable by known rules—of a contract of assurance abandoned and given up for cancellation to the insurer by the owner having a contract right to do so."

This right, in substance and in terms, as thus defined, would seem necessarily to imply that it can only exist during the lifetime of the

insured. By the death of the insured, the policy matures, and such surrender value is extinguished. It follows, therefore, that at the time of the adjudication in the case at bar, there was no surrender value in existence.

[2] The contention of the appellee is, that by the payment of the surrender value, as it existed at the time of the filing of the petition, the personal representative of the deceased bankrupt is entitled to the matured policy and its proceeds. Not only the language of the proviso, but the plain implication therefrom, forbids such an interpretation. If, as stated above, all surrender value had been extinguished by the death of the bankrupt before adjudication, there can be no surrender value to be ascertained at or after that time. Moreover, the insuring company could not be called upon to pay a surrender value that had ceased to exist, or to recognize a right that had been extinguished. Aside, then, from the effect of the necessary implication that the surrender value, where one exists, must be ascertained and stated to the trustee as of the time of the adjudication, or thereafter, the necessary conclusion from what has been said is, that the policies in question, as property having a real value at the time of filing the petition, passed as of the date of the adjudication in their then condition, as matured contracts, to the trustee, and as there was no surrender value attaching to them at that date, the situation was such as to preclude any assertion of the privilege conferred upon the insured bankrupt by the proviso of the fifth subdivision of section 70a of the bankrupt act. The intent of the bankrupt law would be frustrated by an opposite conclusion. If the bankrupt had died before the petition was filed, the money called for by the policies (if the same had not been assigned) would have gone to his personal representative and been applicable to his debts. There is no reason why the same result should not now be attained through the bankruptcy proceedings. Neither the widow nor any of the bankrupt's family are beneficiaries under either of the policies here in question, and the creditors should not be deprived of an important asset to which they are justly entitled.

We have been referred to no case precisely on all fours with the one at bar, and to none in which the clear-cut question is presented as to the effect of the death of the bankrupt between the filing of the petition and the adjudication. The very recent case of In re Judson (D. C.) 188 Fed. 702, is the only case brought to our attention, in which the death of a bankrupt occurred between the filing of the petition and the adjudication. The facts of the case were much complicated, as the proceeding in bankruptcy was against a firm consisting of father and son, alleging bankruptcy of the firm and of its individual members. The father died between the filing of the petition and the adjudication, and the question most considered was, what interest the bankrupt son had in the policy on his father's life after it had matured by his death, and whether that interest passed to the son's trustee—a question very different from any in the present case. It is true, that one of the policies on the life of the deceased member of the firm came under consideration in the question as to whether the trustee

took any interest therein, and the view taken by the judge of the District Court was, that, as the deceased bankrupt had no available interest in these policies, having borrowed beyond his interest in all of them, the trustee can take nothing, because the bankrupt could have gotten nothing. We can only say, as we have already, said, that we do not so understand the effect of the proviso in section 70a of the bankrupt act. The life policies of the deceased bankrupt had, as we have already said, a real value at the filing of the petition, and were capable of transfer by the bankrupt at that date, and passed as such to the trustee, subject to certain rights of the bankrupt as already explained, but which were extinguished by his death before adjudication. Having passed as life policies, with a contingent value, they still continued as assets of the bankrupt after they had matured by his death. The learned judge in the case just cited very forcibly maintains the proposition, that there is no distinction to be drawn between the interest in the policy while it is alive and in the same policy after it has matured, saying, "He that owns a tree, owns the fruits thereof."

On the grounds stated, we think that the order of the court below should be so revised as to give to the trustee in bankruptcy, the petitioner herein, the net proceeds of the policies of insurance in the petition mentioned, as part of said bankrupt's estate.

BUFFINGTON, Circuit Judge, dissents.