LINCOLN NAT. LIFE INS. CO. v. SCALES.

WRIGHT v. SCALES et al.

No. 6692.

Circuit Court of Appeals, Fifth Circuit.

Jan. 13, 1933.

H. L. Adkins and C. B. Reeder, both of Amarillo, Tex., for appellants.

A. A. Lumpkin, H. H. Cooper, S. A. L. Morgan, and D. H. Culton, all of Amarillo, Tex., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Scales, as trustee in bankruptcy of Amarillo Furniture Company, sued to collect a policy of $100,000 issued by the Lincoln National Life Insurance Company on the life of Spencer H. Wright. Wright's executor, Mary Alice Wright, intervened according to Texas practice to claim the fund. Each of the three litigants moved for a directed verdict, and the court directed it in favor of the trustee. Separate appeals from the resulting judgment were taken by the insurance company and by the executrix. There is no dispute of fact. Wright was the president, a director, and a large stockholder in

Amarillo Furniture Company, a Texas corporation. Pursuant to an understanding between the furniture company, Wright, and the insurance company that business insurance should be taken out by the furniture company at its own expense on the life of Wright, he applied for a policy on his life payable to his executors, administrators, or assigns, which was issued under date of February 25, 1928, and assigned by Wright absolutely to the furniture company on April 27, 1928. The premiums were $147, payable on the 25th of each month, with a thirty days' grace before lapsing of the policy. The furniture company paid the first and all other premiums as an expense or investment of the corporation. After three years, that is on February 25, 1931, the policy by its terms would have a loan or cash surrender value of $1,200. On October 25, 1930, the furniture company was put into involuntary bankruptcy, Scales qualifying as trustee on November 14, 1930. The referee orally directed him to pay the premiums on the policy and keep it in life until the final meeting of creditors, and countersigned the checks for the five premiums paid by Scales. Wright during this time made several offers to the trustee to buy the policy, offering at last to give as much as the $1,200 which the policy would be worth on February 25, 1931, less the premiums still to be paid. The referee orally told Scales not to take the offer and not to surrender the policy, but to keep it in force until the final meeting of creditors. Scales, however, on February 24th, after consulting attorneys who represented nearly 90 per cent. of the unsecured debts, determined to collect the cash surrender value and signed the form to that end and sent it with the policy and a certified copy of his appointment and qualification to the insurance company. The latter on March 4th acknowledged receipt of the papers and said: "You did not enclose a court order pertaining to the surrender of the policy. If you will mail the required court order direct to this office we shall be pleased to give the matter of surrender of the policy our attention." The referee gave no such order. On March 12th Wright was killed. On the 13th Scales telegraphed that the court had made no order and the application for cash surrender value was withdrawn; that Wright was dead and proofs of death would follow. The insurance company then claimed that the court order was unnecessary, that it owed the $1,200 and that only, and tendered payment of it. This position it adhered to in the trial and still maintains. The executrix contends that the assignment of the policy was void because a cover originally for a wager; if not, that on the furniture company's bankruptcy its insurable interest in Wright's life ceased and the policy reverted to Wright, and since it then had no cash surrender value it was not an asset that passed to the trustee in bankruptcy; and that if it had any surrender value Wright had offered to pay it according to the proviso of section 70 of the Bankruptcy Act (11 USCA § 110). Scales contends that the assignment was valid and was absolute so that Wright had no further interest in the insurance; that the policy was an asset of the estate in bankruptcy, but Wright not being the bankrupt he had no privilege of redemption under section 70(5) of the act (11 USCA § 110(5)).

The assignment is on its face absolute and complete: "I hereby sell, assign, transfer, set over and convey to Amarillo Furniture Company * . * * all my right, title and interest in and to policy No. 261758 * * * and all monies due or to become due and payable under same, together with full and complete authority to exercise any and all options, benefits and rights * * * inclusive of the absolute right to surrender said policy and receive the cash surrender value thereof," with warranty of the validity and sufficiency of the assignment and of the title to the policy. The legal effect of such an assignment is ordinarily to end the assignor's interest in and control over the policy and to substitute the assignee. Moon v. Williams (Fla.) 135 So. 555; National Life Ins. Co. v. Beck & Gregg Hardware Co., 148 Ga. 757, 98 S. E. 266; Devin v. Connecticut Mutual Life Ins. Co., 59 Okl. 192, 158 P. 435, L. R. A. 1916F, 783. It was stipulated in the trial that the assignee had an insurable interest in the life insured. Rev. Stats. of Texas 1925, art. 5048, provides: "Any corporation * * * may be named beneficiary in any policy of insurance issued by a legal reserve life insurance company on the life of any officer or stockholder of said corporation. * * * The beneficiaries aforenamed shall have an insurable interest for the full face of the policy and shall be entitled to collect same." The public policy thus announced extending a corporation's insurable interest to the life of any officer or stockholder regardless of his activity in or importance to the corporation's business goes to great lengths, but Wright's connection with this corporation was within principles now recognized generally. United States v. Supplee-Biddle Hardware Co., 265 U. S. 189, 44 S. Ct. 546, 68 L. Ed. 970; Wellhouse v. United Paper Co. (C. C. A.) 29 F.(2d)

886. The assignment eliminating Wright from the insurance and substituting his corporation was contemplated from the beginning. So far from being attackable as a cover for a wagering transaction, as assignments to persons having no insurable interest have been sometimes held to be, Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924; Quillian v. Johnson, Executor, 122 Ga. 49, 49 S. E. 801, the purpose of all parties made it the equivalent of a policy taken out by the corporation on its officer's life with itself as beneficiary which is expressly authorized by the Texas statute referred to. There is thus no need in order to sustain the transaction to have recourse to that principle which must have been in mind in giving it the form it took, that one may take out insurance on his own life and assign it to whom he will if a mere wager is not intended. Grigsby v. Russell, 222 U. S. 149, 32 S. Ct. 58, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863; Rylander v. Allen, 125 Ga. 206, 53 S. E. 1032, 6 L. R. A. (N. S.) 128, 5 Ann. Cas. 355; Gordon v. Ware National Bank (C. C. A.) 132 F. 444, 67 L. R. A. 550. Therefore, looking either to the form or to the substance of the transaction, there was a valid insurance on Wright's life in favor of the furniture company which had not cost Wright a cent, and in which after its completion he had no personal interest whatever.

■ The bankruptcy of the furniture company and the cessation of Wright's importance to its business did not terminate the insurance. A life insurance which is supported by an insurable interest when taken does not end when the interest ceases. An extreme case was where the insurable interest was that of a wife in her husband's life. They were divorced and each remarried, but the wife collected her policy when the former husband died. Connecticut Mutual Life Ins. Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251. So where business insurance was taken by a corporation at its expense on the life of its officer, the insurance did not go to him when he severed his connection with the corporation but was collectible by the original beneficiary. Wellhouse v. United Paper Co. (C. C. A.) 29 F.(2d) 886. The bankruptcy of the furniture company here did not end its rights in this insurance nor increase those of Wright.

■■ It is earnestly contended by the executrix that since at the date of the bankruptcy there was no cash surrender value, the policy did not go to the trustee but reverted to Wright; and if it did have any surrender value Wright had the privilege to redeem it as he offered to do. Reliance is put on Bankruptcy Act, § 70(5), 11 USCA § 110(5): "When any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold * * * and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets." The last ten words amply show that a life insurance policy which has any cash value may be assets in bankruptcy; there is nothing in the nature of the chose in action to prevent it. It is property which the bankrupt might have transferred or assigned, and would, aside from this special provision, pass to the trustee under prior portions of section 70. The life insurance policies which are made redeemable have been held to be those only which an individual bankrupt has on his own life payable to his estate or his representatives. Wolter v. Johnston (C. C. A.) 34 F.(2d) 598, 68 A. L. R. 1211; Ruckel v. Metropolitan Life Ins. Co., 119 Kan. 593, 240 P. 409; In re Judson (D. C.) 188 F. 702. Whether or not the words of the statute taken literally may be extended to a policy upon the life of any one other than the bankrupt, we think it clear that no one except the bankrupt is given the privilege to redeem it and to continue to hold it. The bankrupt here is not Wright, but the furniture company. It was made a party to this suit by the insurance company, and has disclaimed all right or interest in this insurance in favor of its trustee, Scales. Wright had and his executrix has no standing under the statute. If Wright wished to do so he might have bought the policy from the trustee under the approval of the court (see Ruckel v. Metropolitan Life, supra), by offering something more than could be realized from its surrender, but only thus could he become again interested in the policy. The series of cases, Burlingham v. Crouse, 228 U. S. 459, 33 S. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148; Everett v. Judson, 228 U. S. 474, 33 S. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154; Andrews v. Partridge, 228 U. S. 479, 33 S. Ct. 570, 57 L. Ed. 929, all related to policies on the life of the bankrupt who was seeking to redeem them. In the first it will be seen at page 473 of 228 U. S.,

585

33 S. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, that there had been as here an absolute assignment of the policy by the insured, who was one of the bankrupts, to McIntyre & Co., another of the bankrupts, and the latter had again assigned it to secure debts. The right of redemption which the insured bankrupt might have had was considered to have passed from him by his absolute assignment, for the creditors who held the policy by the subassignments got the money on it. (C. C. A.) 181 F. 479. Wright's executrix was properly excluded. The furniture company at bankruptcy was the sole owner and beneficiary of the insurance, and the policy was assets subject to its debts. Bank of Minden v. Clement, 256 U. S. 126, 127, 41 S. Ct. 408, 65 L. Ed. 857; In re Judson (D. C.) 188 F. 702.

The trustee found that by paying five premiums of $147 each he could on February 25, 1931, get in cash $1,200. Indeed, the insurance company, though not bound to do so, would according to its practice have loaned on October 25, 1930, the $1,200 less the premiums to be paid until February 25th, so that the policy on October 25th had practically a loan value of about $440. The referee approved the payment of the premiums but verbally refused to authorize the surrender of the policy on February 25th for $1,200, or to ratify the surrender after it was attempted, thinking the $100,000 policy should be carried until action should be taken in creditors' meeting. We think the estate could not be bound by a surrender of the policy by the trustee without the authority or ratification of his court. While the trustee in bankruptcy takes title, he is not like the trustees under deeds and wills who, though having a right to seek direction of a court of equity in cases of difficulty, may have large authority to act as owners without court aid. The bankrupt's property is in custodia legis from the filing of the petition. Thereafter no other court can exercise any jurisdiction over it without consent of the bankruptcy court. Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 32 S. Ct. 96, 56 L. Ed. 208; Isaacs, Trustee, v. Hobbs Tie & Timber Co., 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645. The court, Bankr. Act § 2(7), 11 USCA § 11(7), is given the power to "cause the estates of bankrupts to be collected, reduced to money and distributed." The trustee is named an officer of the court. Section 33 (11 USCA § 61). He must be approved by the court when elected by the creditors, and may be appointed by the court if they fail to elect. Section 44 (11 USCA § 72). His powers depend on the law. He may not compromise or arbitrate anything except under the court's approval. Sections 26, 27 (11 USCA §§ 49, 50). He must collect the property and reduce it to money, but "under the direction of the court." Section 47a(2), 11 USCA § 75(a) (2). He may bring a suit without court order or at least the person sued cannot question the propriety of the suit; but he cannot usually make a final sale without court order or approval. Section 70(b), 11 USCA § 110(b); General Order XVIII and Forms 42, 44, 45, 46 (11 USCA § 53). Creditors must have notice of a proposed sale. Section 58(a) (4), 11 USCA § 94(4). A trustee may disclaim burdensome property, but his action may be revised by his court. Dushane v. Beall, 161 U. S. 513, 16 S. Ct. 637, 40 L. Ed. 791. By no surrender of possession can he defeat the court's control over any part of the estate. Isaacs, Trustee, v. Hobbs Tie & Timber Co., 282 U. S. 734, 739, 51 S. Ct. 270, 75 L. Ed. 645; In re Schermerhorn (C. C. A.) 145 F. 341. Scales as trustee did not on February 24th have a simple debt of $1,200 which he was bound to collect. He had an insurance policy which besides being capable of sale to the highest bidder, Gordon v. Ware National Bank (C. C. A.) 132 F. 444, 67 L. R. A. 550, presented also several options, one of which was to convert it from a contract of insurance into a fixed claim for $1,200 due ninety days thereafter. This involved the exchange of the one obligation for another and different one. The form which he signed so stated: "In consideration of and exchange for the cash value of policy No. 261758 * * * I hereby surrender said policy for cancellation. * * * Said cash value is accepted in full settlement and complete satisfaction of all rights, claims and demands under said policy." In form and substance this approaches a sale of the policy or a compromise of its obligations for $1,200, either of which ought to have the court's approval either precedent or subsequent. The insurance company was right at first in asking for it, and the referee was within his powers in refusing it.

So holding, we find it unnecessary to pass on the question whether if the trustee's act had been binding on him the insurance company's request for a court order before payment of the cash surrender value would have had the effect to put the matter again at large to entitle the trustee to withdraw his election.

Judgment affirmed.