## WOLTER v. JOHNSTON et al.

Circuit Court of Appeals, Third Circuit.
August 22, 1929.

No. 4018.

David M. Harrison, of Pittsburgh, Pa., for appellant.

S. Leo Ruslander, of Pittsburgh, Pa., and Louis E. Boyer, of Du Bois, Pa. (George K. Warn, of Pittsburgh, Pa., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court awarding the cash surrender value of a certain life insurance policy issued on the life of Calvin C. Hoover to the plaintiff, trustee in bankruptcy, and the balance to the defendant Robert B. Johnston.

The Diamond Drilling & Exploration Company, hereinafter called the Diamond Company, was organized under the laws of Delaware in May of 1919 and Calvin C. Hoover was elected its president. On October 27, 1919, the Connecticut General Life Insurance Company issued a policy of insurance on the life of Mr. Hoover and made the Diamond Company the beneficiary without reservation of right to change the beneficiary.

Robert B. Johnston loaned the Diamond Company, $2,400 on or about March 23, 1923, for which as security he received a promissory note for that amount and a diamond drilling bit of the same value. This loan was subsequently paid to Mr. Johnston in full and the bit and note were returned.

On April 1, 1926, at a meeting of the board of directors of the Diamond Company, at which Calvin C. Hoover, Bertha B. Hoover,

his wife, and A. H. Broadbent, directors, were present, a resolution was passed consenting to the change of the beneficiary on the life of Calvin C. Hoover from the Diamond Company "to such person or persons as the said Calvin C. Hoover shall direct." Thereafter, in accordance with the directions of Mr. Hoover, the insurance company changed the beneficiary to "Robert B. Johnston, creditor as his interest may appear, the balance, if any, to the executors, administrators or assigns of the insured," and on May 4, 1926, mailed the policy to him.

On April 23, 1926, 22 days after they had authorized the change in the beneficiary of the life insurance policy, the directors of the Diamond Company authorized Calvin C. Hoover, who had been president from its incorporation, to file a voluntary petition in bankruptcy for the company. This he did on June 25, 1926.

All the premiums on this policy were paid by the Diamond Company until the beneficiary was changed. Thereupon they were paid by Mr. Johnston, one premium before and three after the petition in bankruptcy was filed, four being paid by him before the death of Mr. Hoover. But these payments of Mr. Johnston were made without the knowledge of the trustee in bankruptcy, who appears not to have known of the policy until just before Mr. Hoover's death on February 7, 1927.

As a matter of interest, though it has no direct bearing on the decision in this case, it should be stated that on September 21, 1919, shortly after the Diamond Company was organized, Mr. Johnston loaned Mr. Hoover $9,500 on which $3,300 was paid March 28, 1923, and the balance of $6,200 with interest was still due him when the change in the beneficiary of the policy was made. This money was spent in purchasing machinery designed for use in exploring and testing coal lands. The machinery was turned over to the Diamond Company by Mr. Hoover, who gave his personal note and stock of this and another company to Mr. Johnston as collateral security for the loan.

After the death of Mr. Hoover, a controversy arose as to whom the proceeds of the policy belonged, and the insurance company filed a petition in the District Court asking leave to pay the amount of the policy admittedly due somebody, into court. This was allowed, and the fund is claimed by Mr. Johnston, by the trustee in bankruptcy, and by Mr. C. E. Krebs, a stockholder of the Diamond Company, who filed a petition on behalf of himself and all other stockholders of the company who might desire to join with him.

The real question at issue is the legal ownership of the proceeds of the policy. The learned district judge held that the trustee in bankruptcy was entitled to the cash surrender value of the policy at the time of the adjudication in bankruptcy on June 25, 1926, which was $1,459.25.

It is apparent that there is no ground upon which Mr. Krebs can prevail. This leaves remaining as rival contestants the trustee in bankruptcy and Mr. Johnston.

If the change of beneficiary was a gift to Mr. Johnston, as the appellant in effect alleges it was, being a gift, of course, without consideration and was ultra vires and void, and the proceeds of the policy belong to the trustee in bankruptcy who is still administering the estate.

The money loaned to the company was used by it to redeem the insurance policy in question, together with another, not in litigation here, which had been pledged as collateral security for a loan with the Dubois Bank. Shortly after the company's indebtedness to the bank was paid, the policy with changed beneficiary, as above stated, was delivered to Mr. Johnston. If the transfer of this policy was intended as additional security to Mr. Johnston, he should have changed the beneficiary and returned it to the company with the note and diamond bit after the loan was paid. As to the transfer of the life insurance policy to him, Mr. Johnston said: "I was to take what money I was entitled to for my debts and the balance I was to turn over to Mrs. Hoover." The directors had no right to pay Mr. Hoover's debts or make a gift to Mrs. Hoover. That was their object in changing the beneficiary. It was therefore ultra vires and void. If, as was doubtless true, the $9,500 borrowed by Mr. Hoover was spent in purchasing machinery which was turned over to the Diamond Company and used by it, Mr. Johnston has security in the stock turned over to him. While it is true that the friendship between him and Mr. Hoover resulted in loose business methods between them and induced him to loan money to the company and to Mr. Hoover when he otherwise would not have done so, yet when the rights of creditors and stockholders are involved, the transactions between them must be construed according to their legal effect.

Bankruptcy Act § 70(a)(5), 11 USCA § 110(a)(5) provides that when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within 30 days after the cash surrender value has been ascertained and stated to the

600

trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets. But when the beneficiary is the bankrupt and the insured does not have the right to change the beneficiary, the entire beneficial interest in the policy, until it passes into the hands of the trustee, remains an asset of the estate in bankruptcy to which the trustee is entitled. The ultra vires action of the directors and the payment of four premiums by Mr. Johnston do not make him the rightful owner of the policy in question. The beneficial interest in the policy still remains an asset of the estate in bankruptcy. Kirkpatrick v. Johnson (D. C.) 197 F. 235; In re Thomas (D. C.) 199 F. 214; United States v. Winona & St. Peter Railroad Co., 165 U. S. 463, 17 S. Ct. 368, 41 L. Ed. 789; Globe Bank & Trust Co., etc., v. Martin, 236 U. S. 288, 35 S. Ct. 377, 59 L. Ed. 583. The most that Mr. Johnston can demand is the return of the premiums which he paid with interest and these are justly due him. The case of Burlingham v. Crouse, 228 U. S. 459, 33 S. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148, upon which the learned judge below relied, does not apply to the facts of this case, because the bankrupt in the case at bar had no policy payable to himself, and further because there was no question in that case of the legality of the assignments of the policy by Thomas A. McIntyre and T. A. McIntyre & Co. Those transfers were valid and conveyed the beneficial interests in the policies, but the transfer in this case was ultra vires and conveyed nothing. As this case stood on the adjudication, the Diamond Company was still the legal beneficiary and the insured did not have the cash surrender value ascertained and did not pay or offer to pay, if he could legally have done so, the cash surrender value to the trustee. If the insured refuses to do that, section 70(a)(5) provides that the "policy shall pass to the trustee as assets." Consequently we hold that the policy passed to the trustee as assets of the estate in bankruptcy; that it was such at the time of Mr. Hoover's death; and that Robert B. Johnston, defendant, is entitled to the return of the premiums which he paid with interest, and the trustee is entitled to the balance of the proceeds of the policy.

The decree of the District Court is reversed.