**In the Matter of FOUNT–WIP DISTRIBUTORS OF SOUTH JERSEY, INC., Bankrupt.**

**Bankruptcy No. B–79–00453.**

United States Bankruptcy Court, D. New Jersey.

June 11, 1980.

Edward Katman, pro se, and Michael J. Kline, Camden, N. J., of counsel, for trustee, Edward Katman.

Davis & Reberkenny by William Hogan, Cherry Hill, N. J., for First Peoples Bank of New Jersey.

Lacktman, Natal & Kasen, by David A. Kasen, Haddonfield, N. J., for bankrupt, Fount-Wip Distributors of South Jersey, Inc., and Estate of Etta Braverman.

WILLIAM LIPKIN, Bankruptcy Judge.

On March 5, 1979 Fount-Wip Distributors of South Jersey, Inc., (Fount-Wip), filed a voluntary Petition in Bankruptcy in this District and Edward Katman was subsequently appointed Trustee of the Estate.

The principal stockholder and officer of Fount-Wip was Etta Braverman (Braverman).

At the time of filing of the Petition there was in effect a life insurance policy on the life of Braverman in the sum of $25,000.00 and Fount-Wip was named not only as Beneficiary, " . . . to whom the insurance shall be payable in the event of death", but also was designated as Owner of the policy. The bankrupt corporation paid the premiums on the policy. There was no right in the policy for Braverman to change the beneficiary. The whole life policy was issued on October, 1976, and called for annual premium of $691.00, plus $43.00 for premium waiver disability benefit.

As stated above, the proceedings in this court commenced on March 5, 1979 and Braverman died on September 4, 1979. It has been represented to this court that Braverman paid the premium due after the date of filing. The policy provided for the following premium payments: monthly, $69.88; quarterly, $187.82 and semiannually, $374.64.

Also, prior to the filing of the Petition Fount-Wip had executed in favor of the First Peoples Bank of New Jersey (Peoples), a Security Agreement as to the personal property of Fount-Wip, including "contract rights" and the "proceeds thereof". The Security Agreement was perfected by the filing of Financing Statements with the Secretary of State of New Jersey and with the Clerk of Atlantic County. It was admitted by Peoples that the Security Agreement does not specifically mention the life insurance policy set forth above.

On September 4, 1979 Braverman died. The life insurance policy on that date had a cash surrender value of $302.00.

All three entities—the Trustee, Peoples and the Estate of Braverman claim a right to ownership of the proceeds of the policy now in the sum of $25,068.78, which funds are held in escrow by the attorney for the Debtor Corporation.

For the following reasons the Trustee is vested with the proceeds of the policy:

■ The inclusion by Peoples of the words "contract rights" and "proceeds thereof" in the Security Agreement cannot be construed to extend to and include the proceeds of the life insurance policy in which Fount-Wip was designated as the beneficiary. The Uniform Commercial Code adopted by the State of New Jersey specifically excludes its application as to an interest or claim in or under any policy of insurance. N.J.S.A. 12A:9–104(g), which deals with Secured Transactions, provides as follows: "This Chapter does not apply . . . (g) to a transfer of an interest or claim in or under any policy of insurance; . . . " 1

The Debtor Corporation, Fount-Wip, upon the death of the insured, if the Debtor was not in Bankruptcy, would have had the right to obtain the proceeds from the insurance company and the insurance company would not and could not safely, under the facts in this case, legally have paid the proceeds to Peoples, even though Fount-Wip was a debtor of Peoples. This is manifestly clear from the provisions of the insurance policy that mandates payment to the named beneficiary by the insurance company unless prior to the death of the insured there is an assignment of the proceeds of the insurance policy to someone else, as in this case, the Bank. The requirement of an

---

1. See *Matter of Maplewood Poultry Co.*, 2 B.R. 545, 554 (U.S.B.C. Maine 1980),

Section 9–104(g) of the New Jersey Uniform Commercial Code excludes from Article 9 coverage "a transfer of an interest or claim in or under any policy of insurance . . .." There is no reported case law construing the exclusionary language of section 9–104(g) in reference to a security interest in unearned insurance premiums. But the breadth of the exclusion in section 9–104(g) itself and the comments of its draftsmen convince the court that Article 9 of the Uniform Commer-

cial Code does not apply to a secured transaction in which the collateral consists of unearned insurance premiums.

To be noted is the existence of N.J.S.A. 17:16D–1 et seq., which deals with Insurance Premium Financing. In the present case Peoples could have obtained an assignment from Fount-Wip of the policy if it desired to include it as part of its secured position. The Uniform Commercial Code excludes a transfer of an interest or claim in or under any policy of insurance.

assignment by the insured or owner on notice to the insurer, in order to affect the rights of the named beneficiary or owner and vest the right of proceeds in an assignee, such as is now asserted by Peoples, is set forth in N.J.S.A. 17B:24–4(a), which reads as follows:

> Nothing in this Title shall prohibit any person insured under an insurance policy or annuity contract, other than group, from assigning or not assigning, as provided by its terms. Subject to its terms relating to assignability, any life or health insurance policy or annuity contract, other than group, whether heretofore or hereafter issued, under the terms of which the beneficiary may be changed upon the sole request of the insured or owner, if other than the insured, may be assigned either by pledge or transfer of title, by an assignment executed by the insured or such owner alone and delivered to the insurer, whether or not the pledgee or assignee is the insurer. Any such assignment shall entitle the insurer to deal with the assignee as the owner or pledgee of the insurance policy or annuity contract, other than group, in accordance with the terms of the assignment, until the insurer has received at its home office written notice of termination of the assignment or pledge. (Underlining added)

The Debtor Corporation, as owner of the policy would, in order to create a right therein to Peoples, have had to assign the policy to Peoples. That it did not do and Peoples could not have sued the insured or the insurer to collect the policy proceeds.

■ With the intervention of the bankruptcy proceedings the Trustee of Fount-Wip became vested with all property vested in the bankrupt at the time of filing [2] of the Bankruptcy Petition. Bankruptcy Act, Section 70a (11 U.S.C. § 110a).[3] Subdivision a of Section 70 further provides as to the vesting of title in the trustee, an exclusion of exempt property from the bankruptcy estate, and the retention of life insurance policies by a *natural person* bankrupt upon payment of cash surrender values.[4] The

---

2. However title may vest at a later date. See the applicable statute to this proceeding, Section 70a of the Bankruptcy Act (2nd paragraph), which provides that:

> All property . . . which vests in the bankrupt within six months after bankruptcy by bequest, device or inheritance shall vest in the trustee . . . and shall be free and discharged from any transfer made or suffered by the bankrupt after bankruptcy.

This section provides exceptions to the general rule that the trustee's interest is limited to the bankrupt's property at the time of the petition. It is to be noted that no exception is made for insurance proceeds which vest within this period, and therefore, this property does not become vested in the trustee by reason of accrual within six months.

This omission was corrected by the Bankruptcy Reform Act which manifested a clear intent to bring after-acquired insurance proceeds into the estate. 11 U.S.C. § 541(a)(5)(C). It is therein provided:

> § 541(a) . . . Such estate is comprised of all the following property, wherever located: . . .
> (5) An interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
> (C) as a beneficiary of a life insurance policy or of a death benefit plan.

The Code thus prevents the debtor from receiving a windfall from insurance proceeds within 180 days of the filing of the petition.

The court need not consider these provisions in the instant case relative to transfer by payment of the cash surrender value or vesting in six months since the *bankrupt corporation* was not only the beneficiary but was also the owner of the policy, and therefore title vested in the trustee when the petition was filed. The insured, Braverman, was not the bankrupt and the beneficiary was not a natural person and could not compel the trustee to accept the cash surrender value of the policy.

3. Bankruptcy Act, 70a (11 U.S.C. § 110a):

> The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act, . . .

4. That when any bankrupt, who is a natural person, shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or

insurance proviso of Section 70a accords no rights to the personal representatives of the insured, Braverman, nor to the creditor, Peoples, as against the right of the Trustee, Katman, to the insurance proceeds. This redemption privilege is restricted in operation to bankrupts who are natural persons. (*In re Jacobson*, 24 F.Supp. 749 (D.C.N.J. 1938). This section is inapplicable since the bankrupt, Fount-Wip, is a *corporation* who was both owner and beneficiary of the policy. The insured, who is not the bankrupt, had no right to change the beneficiary from the bankrupt to any other beneficiary.

■ In this case the Trustee did not know until the death of Braverman of the existence of the policy. The fact that the ownership of the policy in the bankrupt corporation came to light after her death does not affect the right of the Trustee to pursue his rights under the policy. If Braverman, the principal of Fount-Wip, had disclosed the ownership of Fount-Wip in the policy, Katman would have been free to treat with the policy as *he* saw fit. Braverman could not have demanded that Katman assign the policy to her upon payment of the cash surrender value because she was not the bankrupt. The choice was Katman's and not Braverman's.

The case of *Burlingham et al. Trustee v. Crouse*, 228 U.S. 459, 33 S.Ct. 564, 57 L.Ed. 920, 46 L.R.A.,N.S., 148 (1913) recognizes the right of the bankrupt, who is also the insured, to pay to the trustee the cash surrender value under the policy and to retain the policy free from the claims of the bankrupt's creditors. The effect is to preserve to a bankrupt a policy of insurance that he may have difficulty in obtaining because of conditions of health at the time of bankruptcy, or age which would require higher premiums. That case recognized the right of the trustee to take possession of all property of the bankrupt at the time of filing of the petition in bankruptcy.

secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his

The Fifth Circuit in *Curtis v. Humphrey*, 78 F.2d 73, (1935), *cert. denied* 296 U.S. 605, 56 S.Ct. 121, 80 L.Ed. 429, dealt with a case where the bankrupt was the owner and beneficiary of a policy on the life of her husband, wherein the court held that the proceeds of the policy belonged to the wife, individually, and not to her creditors.

These cases cannot aid Peoples or the Estate of Braverman. The insured individual was not the bankrupt nor the beneficiary of the policy. The bankrupt corporation was the owner-beneficiary of the policy.

The facts in this case do not fall within facts in *Curtis v. Humphrey* or *In re Jacobson*, supra, wherein the bankrupt individual was also the beneficiary of the policy upon the life of her husband. In *Jacobson* it likewise was held that the proceeds of the policy belonged to the wife individually and not to her creditors.

The case of *Wolter v. Johnston*, 34 F.2d 598, 14 AmB.R.(N.S.) 510 (3rd Cir., 1929) is akin to the case now before this court. Therein the insured, one Calvin C. Hoover, was not the bankrupt. A policy on his life named the bankrupt corporation as beneficiary without reservation of right to change the beneficiary. The board of directors endeavored by resolution to change the beneficiary to be one Robert B. Johnston. The court therein set aside the change as being without consideration. The change in beneficiary was made by resolution April 1, 1926 with the policy mailed to Hoover with the change on May 4, 1926 and the Petition in Bankruptcy was filed April 23, 1926. The corporation paid the premiums until the beneficiary was changed, after which Johnston made such payments, one of which was before the Petition in Bankruptcy was filed and three paid after the petition was filed. Hoover died on February 7, 1927. In that case the trustee did not know of the policy until just before the death of Hoover.

estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets; (underlining added).

Therein it was held that the stockholders had no claim to the proceeds of the policy. It was likewise held Johnston, the beneficiary, had no right thereto.

The court in *Wolter v. Johnston*, supra, page 600, stated:

But when the beneficiary is the bankrupt and the insured does not have the right to change the beneficiary, the entire beneficial interest in the policy, until it passes into the hands of the trustee, remains an asset of the estate in bankruptcy to which the trustee is entitled.

The court further stated, which declaration is applicable to the case at bar,

The most that Mr. Johnston can demand is the return of the premiums which he paid with interest and these are justly due him.

The court in *Wolter v. Johnston*, page 600, refers to *Burlingham v. Crouse*, supra, and distinguishes it, as this court has distinguished that case from the case at bar.

As was stated in *Wolter v. Johnston*, so must it be stated here, substituting the name Katman as the trustee and defendants herein for such parties:

Consequently we hold that the policy passed to the trustee as assets of the estate in bankruptcy; that it was such at the time of Mr. Hoover's death; and that Robert B. Johnston, defendant, is entitled to the return of the premiums which he paid with interest, and the trustee is entitled to the balance of the proceeds of the policy.

The reasoning in the case of *Mutual Trust Life Insurance Company v. Wemyss*, 309 F.Supp. 1221, 20 A.L.R. Fed. 844 (D.C. Me.1970), dealing with the right to insurance proceeds of a policy payable to a corporation beneficiary who is also the owner of the policy is sound. That case favors the interpretation that section 70a(5), when correctly construed, is applicable only to a bankrupt who is the insured. Therein it was held that the beneficiary, an individual, who was the bankrupt could not be paid the proceeds of the policy as against the creditors whom the policy was designed to bene-

fit. The facts in the case now before this court even go further than in the *Wemyss* case. In this case the bankrupt was not the insured and is not an individual as required in 70a(5) and furthermore, the corporation was the owner of the policy as well as the beneficiary. In *Wemyss* the policy was taken out by one upon the life of another who was his employee as business insurance for the protection of the bankrupt's business in the event of the employee's death. The court stated:

A construction of the statute which would permit a bankrupt to keep such a policy, free from the claims of his creditors, would be an unwarranted perversion of the clear Congressional intent and plainly at variance with the underlying policy of the Bankruptcy Act to make available, for distribution among a bankrupt's creditors all his business assets not otherwise specifically exempt.

The facts in this case are equally clear that Braverman took out the policy which would redound to the benefit of the creditors of Fount-Wip. To permit her estate or Peoples to claim the proceeds would likewise be a perversion of the Bankruptcy Act.

Peoples as a creditor of Fount-Wip after liquidating the assets upon which it has a lien and if not paid in full therefrom, would have a right to participate together with other unsecured creditors in the distribution of the proceeds of the insurance policy for such deficiency.

The heirs or estate of Braverman have no right to the insurance proceeds except to the amount paid for premiums after the Petition in Bankruptcy was filed. The balance is to be paid to the Trustee, Edward Katman.

An Order shall be entered in accordance with the foregoing findings of fact and conclusions of law.