**In re PEARL–WICK CORPORATION, Debtor.**

**PEARL–WICK CORPORATION, Plaintiff,**

v.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant and Interpleading Plaintiff,**

v.

**SUSWOL HOLDING CORPORATION, Masada Industries, Inc., Sandra Rand, Carol Sussberg, et al., Interpleaded Defendants.**

**Bankruptcy No. 81 B 10295.
Adv. No. 81 5043A.**

United States Bankruptcy Court, S. D. New York.

Oct. 30, 1981.

Angel & Frankel, New York City, for debtor; Eric S. Brown, Bruce Frankel, New York City, of counsel.

Shapiro, Shiff, Beilly, Rosenberg & Fox, New York City, for defendants, Sandra Rand and others; Roy J. Karlin, New York City, of counsel.

Townley & Updike, New York City, for defendant and interpleading plaintiff John Hancock Mutual Life Insurance Co.; Terence J. Lynch, New York City, of counsel.

## DECISION ON MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT

BURTON R. LIFLAND, Bankruptcy Judge.

At issue is the disposition of death benefit proceeds of a life insurance policy. Rivals for entitlement are the debtor and the prior owners of the debtor's corporate parent. The essential and controlling facts are not in dispute. Resolution of the contest requires an analysis of a certain clause in a stock purchase and sale agreement to determine whether the clause operated as a present assignment of the policy maintained by Pearl-Wick Corporation ("Pearl-Wick" or "debtor").

### I. *Background and Facts*

The debtor's voluntary Chapter 11 petition and the accompanying affidavit filed pursuant to local rules[1] shows the following.

Pearl-Wick is presently inactive, but was, in more posh days, a well known manufacturer of rattan household products. In November of 1978, unable to meet its obligations, it ceased business operations and gave peaceful possession of its physical assets to Chase Manhattan Bank N.A. ("Chase"), its major secured creditor. The proceeds of the liquidation of the assets by Chase were sufficient to satisfy the entire Chase claim

and a portion of the obligation to a junior lien creditor. However, claims filed in these proceedings and estimates by counsel indicate that there are substantial unpaid debts to other creditors in excess of $2 million.[2] No other apparent activity ensued for the next two years following the liquidation. A non-operating holding company, Suswol Holding Corporation ("Suswol") is the sole shareholder/parent of Pearl-Wick.

Earlier, on December 7, 1964, John Hancock Mutual Life Insurance Company ("John Hancock") entered into a contract of life insurance in the face amount of $500,-000.00 (the "Policy") with Pearl-Wick, insuring one Darwin R. Sussberg ("Sussberg"), a director and officer of Pearl-Wick. Pearl-Wick was designated owner and beneficiary and held the Policy.

During 1977, Pearl-Wick was indebted to Bankers Trust Company in the approximate amount of $118,000. This indebtedness was secured by an assignment of the Policy and was ultimately satisfied by at least two cash loans against the Policy during 1977.[3]

On April 15, 1977, pursuant to a purchase and sale agreement (the "Agreement"), Masada Industries, Inc., ("Masada") acquired all the outstanding common stock of Suswol and in turn its wholly-owned subsidiary, Pearl-Wick. As consideration, the individual owners and sellers of Suswol (and Pearl-Wick) received a combination of cash, notes, and cumulative preferred stock of Suswol, which by the terms of the Agreement Masada caused Suswol to issue and which provides the mechanism for payout of the balance of the sale through dividends and redemption. In Section 4.1(J) of the Agreement, Masada also agreed to secure any unpaid balance with the Policy. By letter agreements, Sussberg severed his relations with both Suswol and Pearl-Wick and recommenced employment with (new) Suswol.

---

1. Additional Local Bankruptcy Rule XI–2 (S.D. N.Y.) "Affidavits to Be Filed."

2. August 25, 1981 transcript at 26.

3. See letter from Townley & Updike, counsel for John Hancock, dated September 14, 1981, filed October 6, 1981, which relates to loan transactions on the Policy, and which is made part of the record. August 25, 1981 transcript at 26.

Sussberg died on January 23, 1980 and the Policy proceeds became payable. The unpaid balance on the Suswol sale exceeds the Policy value.

The individual sellers and prior owners of Suswol (now preferred stockholders) filed a claim for the Policy proceeds on May 7, 1980. On January 7, 1981, they instituted an action in New York State Supreme Court against John Hancock, Masada, Suswol, and Pearl-Wick seeking a determination that they were entitled to receive the Policy proceeds pursuant to Section 4.1(J) of the Agreement. John Hancock interposed a counterclaim in interpleader. Masada, Suswol and Pearl-Wick answered with a general denial.

On February 4, 1981, Pearl-Wick filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Concurrently, it also commenced the instant adversary proceeding against, among others, the above state court complainant individual sellers and prior owners of Suswol (hereinafter "Defendants") to recover the proceeds of the Policy for itself.

Section 4 of the Agreement, captioned "Conduct of Business of Masada" contains various covenants and agreements. Specifically, Section 4.1(J), the provision at issue, provides:

> 4.1 MASADA covenants and agrees that, commencing on the Closing Date, and so long as any of the Preferred Stock or any Contingent Note shall remain outstanding, it will:
> (J) Cause Suswol to maintain in force and effect a certain life insurance policy on the life of Sussberg, the proceeds of which upon the death of the insured shall be payable to Suswol in the face amount of $500,000.00, (Policy # 8882121 of John Hancock Mutual Life Insurance Company) so long as the entire amount of any premiums due on said policy are payable out of any dividends, interest or other income generated by such policy. Further, Masada agrees that in the event of the death of the insured at any time during which

the Preferred Stock and/or Contingent Notes are outstanding and while Suswol is the beneficiary under such policy, the proceeds of such policy shall be promptly applied by Suswol to redeem and/or prepay the Preferred Stock and/or Contingent Notes.

Pearl-Wick contends that this provision is only a promise by Masada to have Suswol maintain life insurance on the life of Sussberg and that it does not work a present assignment of the Policy from Pearl-Wick to Suswol (which is necessary to give the disputed clause the effect desired by Defendants). At most Pearl-Wick argues, the clause is a covenant by Masada to cause Suswol to have an assignment of the Policy executed in the future. Pearl-Wick points out, and it is not disputed, that prior to and at the time of the execution of the Agreement, Suswol was neither an owner nor a party to the Policy. Somewhat reciprocally, Pearl-Wick was neither a party nor a signatory to the Agreement, and further, was not even designated in the Agreement's notice provision (Section 11.5). Lastly, John Hancock has never received any notice of a change of beneficiary under the Policy.

The parties, accommodating John Hancock, who has taken the position of a neutral stakeholder in this controversy, have entered into a court-approved stipulation whereby the Policy proceeds have been escrowed, John Hancock released from further liability, and the state court law suit suspended with provision for automatic dismissal upon resolution of the matter by this court. Both sides have made motions for summary judgment. Fed.R.Civ.Pro. 56; Bankr.Rule 756. The hearing on the motions was held on August 25, 1981, and decision was reserved pending submission of additional data from the parties (ultimately received and filed on October 6, 1981).

II. *Discussion*

■ New York does not take a rigid view of assignments. *Morse v. Swank, Inc.*, 459 F.Supp. 660, 665 (S.D.N.Y.1978). In most instances, no particular form or language is necessary to effect an assignment. *Coastal*

Commercial Corp. v. Samuel Kosoff & Sons, Inc., 10 A.D.2d 372, 376, 199 N.Y.S.2d 852, 855; Adams v. Garzillo, 155 Misc. 358, 359, 279 N.Y.S. 398, 399 (1935). What is required is language that manifests "the intention of the owner of a right to transfer it." 6 N.Y.Jur.2d Assignments § 28 at 264; See Adams, supra.

Defendants torture the law when they state: "All that is required for an effective assignment of a life insurance policy is a writing manifesting the present intention to divest the owner of its control and interest under the policy." Transcript of August 25, 1981 at 24. Although this statement contains the elements essential for an assignment, the emphasis is misdirected. As expounded above, it is the *owner* of the right that must evidence a present intent to divest itself of its property.

█ Reading the disputed provision with this in mind, it becomes readily apparent that Pearl-Wick, the sole owner of the Policy, was not divested of the Policy by way of Clause 4.1(J), and thus, no assignment occurred. It could not manifest the requisite intent through the medium of an agreement to which it was not a signatory or even a party. Moreover, the provision does not even speak in terms of a transfer.

Defendants failed to recognize and appreciate that the Policy was in Pearl-Wick's control and not Suswol's. Only Pearl-Wick could divest itself of this interest. That certain officers and directors of Pearl-Wick held similar posts in Suswol or Masada, who are parties to the agreement, does not without more convert Section 4.1(J) into an assignment between Suswol and Pearl-Wick. Stock control, interlocking directors and officers, and the like are in and of themselves insufficient for the court to disregard the individuality of parent and subsidiary. Musman v. Modern Deb, Inc., 50 A.D.2d 761, 762, 377 N.Y.S.2d 17, 20 (1975). Pearl-Wick has always been a corporate entity separate and apart from Suswol, transacting business in its own right. Masada's promise in Section 4.1(J), which is directed solely to Suswol (in contrast to other provisions of Section 4 that direct Masada to

"cause Suswol *and each of its subsidiaries*") cannot be read to work an assignment of Pearl-Wick property to Suswol, and there is no foundation for "piercing the corporate veil" of the Suswol/Pearl-Wick, parent-subsidiary structure.

█ A parent and subsidiary comprise two wholly-separate entities with individual property rights. The parent corporation is but a shareholder of the subsidiary and no transfer of title to corporate property takes place. *Boise Cascade Corp. v. Wheeler*, 419 F.Supp. 98, 101–102 (S.D.N.Y.1976) *aff'd without opinion* 556 F.2d 554, (2d Cir. 1976); *See also Berger v. Columbia Broadcasting System, Inc.*, 453 F.2d 991, 994 (5th Cir. 1972); *Sylvia Martin Foundation, Inc. v. Swearingen*, 260 F.Supp. 231, 234 (S.D.N.Y. 1966).

█ Conduct necessary to support a piercing of the Suswol/Pearl-Wick corporate veil is not even intimated. It is well established that the existence of a single shareholder "parent" corporation is by itself insufficient. There must be a showing of fraud, misrepresentation, or illegality in their structure. *Lehigh Valley Industries, Inc. v. Birenbaum*, 389 F.Supp. 798, 805 (S.D.N.Y.1975), *aff'd* 527 F.2d 87 (2d Cir. 1975).

█ For Section 4.1(J) to become operative as Defendants contend, an assignment subsequent to the Agreement would have had to have been executed by Pearl-Wick in favor of Suswol. See *Matter of Fount-Wip Distributors of So. Jersey*, 4 B.R. 424, 426 (Bkrtcy., N.J.1980). This did not occur. The need to take further steps (i. e.: execute other legal documents) to effectuate various aspects of the purchase and sale transaction was recognized at other junctures in the Agreement. For example, section 5 required Masada to grant a pledge of stock. This was accomplished by the execution of a separate pledge agreement to realize the intent of section 5; a separate act. The Agreement was not designed to be self-sufficient. Alternatively, in structuring the transaction, it was within the control of Defendants to see to the transfer of

the Policy to Suswol prior to the execution of the Agreement, rather than rely upon Masada. Pearl-Wick cannot now be held responsible for the misfeasance of Masada. *Cf. Whiteford Plastics Co. v. Chase Nat. Bank,* 179 F.2d 582 (2d Cir. 1950).

■ Putting to rest any lingering doubt that the disputed clause is nothing more than an affirmative covenant by Masada to arrange a future assignment of the Policy is the confirmed mistaken belief by the attorney for the Defendants that the Policy was freely transferable at the time the Agreement was entered into.

Defendants' counsel, asserting knowledge of the affairs of Pearl-Wick and Suswol, including that knowledge gained from representation of the Defendants in the 1977 transaction and at the closing (August 25, 1981 transcript at 10) in response to inquiry of this Court with respect to the Bankers Trust Company debt and Policy assignment, stated, "We were aware of the affairs of Pearl-Wick and Suswol and we were aware that it (Bankers Trust Company debt) was paid off prior to the closing date, and that the insurance policy was free and clear." August 25, 1981 transcript at 10. And again, at transcript pages 17 and 18, with respect to interests of Bankers Trust Company and other creditors of Pearl-Wick: "There have been no perfected interests over and superior to those of the perfected interests of the interpleaded defendants here as of the date of the purchase agreement."

In sharp contrast to these assertions, the post-hearing submission of the loan data by the interpleading Plaintiff (see note 3 *supra*) reveals that there were three cash policy loans made by John Hancock for Pearl-Wick's benefit *after* the April 15, 1977 closing:

1. a $59,689.89 loan on June 7, 1977 to Bankers Trust Co.

2. a $59,689.89 loan on June 8, 1977 to Bankers Trust Co.

3. an $811.91 loan on July 19, 1977 to Pearl-Wick Corporation.

It is clear, therefore, that as late as June 8, 1977, the Policy was still encumbered by the assignment to Bankers Trust and was not available for purposes of a contemplated assignment until after that date. Perforce section 4.1(J) is at most a promise to cause an assignment in the future. It should be noted that there was apparently nothing to prevent the Defendants, who controlled Pearl-Wick prior to April 15, 1977, from clearing the Bankers Trust debt and formalizing the assignment before the closing. While Defendants' optimistic faith in Masada and Suswol to fully perform their obligations was misplaced, their confidence was nevertheless understandable given Susberg's continued employment in a management capacity with Suswol after the closing. The failure to follow through with an assignment of the Policy is fatal to the Defendants' cause.

### III. *Conclusion*

■ Having determined that Section 4.1(J) is legally insufficient to constitute an assignment, the Policy is property of the estate, 11 U.S.C. § 549, and Pearl-Wick, the designated beneficiary, is entitled to the proceeds therefrom as debtor in possession, 11 U.S.C. § 1107. *See In re American Range & Foundry Co.,* 14 F.2d 308, 310 (D.C.Minn.1926); *Lincoln Nat. Life Ins. Co. v. Scales,* 62 F.2d 582, 584 (5th Cir. 1933) *See also Fount-Wip, supra; Cf.* N.Y. Ins.Law § 166 (McKinney 1976). Concomitantly, the purported assignment for security to Defendants is ineffective. The claimed security interest would have arisen from the Agreement to which Policy-owner Pearl-Wick was not a subscriber. As an assignee acquires no greater rights than those possessed by their assignor, *Robischon v. Genesee Valley Medical, Inc.,* 401 N.Y. S.2d 379, 92 Misc.2d 854, 856 (1977); *United States v. Jacobs,* 304 F.Supp. 613, 622 (S.D. N.Y.1969), who in this instance owned nothing, Defendants acquired nothing.

Upon the foregoing, summary judgment is granted to Pearl-Wick and denied to Defendants. The proceeds of the Policy are to be turned over to the Debtor.

So Ordered.