In re McCULLOCH & SON, INC., Debtor,

James C. McCULLOCH, Plaintiff,

v.

Everette H. WILLIAMS, Trustee, Defendant,

Colin W. ACKERSON, Plaintiff-Intervenor,

v.

Everette H. WILLIAMS, Trustee, Defendant.

Bankruptcy No. 381–03301.
Adv. No. 82–0584.

United States Bankruptcy Court, D. Oregon.

May 6, 1983.

Alexander T. Bishop, Portland, Or., for plaintiff.

Thomas J. Greif, Portland, Or., for plaintiff-intervenor and trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW DENYING TURNOVER OF LIFE INSURANCE POLICY TO PLAINTIFF

DONAL D. SULLIVAN, Bankruptcy Judge.

The debtor is a closely-held corporation. Plaintiff is a former director and shareholder of the corporation. Plaintiff filed a complaint to require the turnover of a key man life insurance policy on his life. The policy is a $100,000.00 annual renewable term policy which was among the policies purchased by the debtor on its shareholders' lives.

The debtor purchased the policy in question in connection with an agreement governing the rights of repurchase of the company's stock in the event of disability, death, sale of stock or withdrawal of a shareholder from active management. In 1980 doctors diagnosed plaintiff as having leukemia and the plaintiff, at that approximate time, withdrew from active management because of the resulting disability. Premiums appear to have been waived on the policy because of the insured's disability. On April 15, 1982, the parties to the buy and sell agreement attempted to exercise their rights under the disability provisions of the agreement. After the debtor agreed to buy plaintiff's stock, plaintiff demanded that the policy be turned over to him pursuant to the buy and sell agreement. The debtor, apparently on advice of counsel, did not turn over the policy to plaintiff and, on October 13, 1981, creditors filed an involuntary petition in bankruptcy. Colin W. Ackerson, who is a principal shareholder and officer and who guaranteed at least one of the major debts of the debtor, filed a complaint in intervention resisting the turnover.

The trustee should not be required to turn over the insurance policy described in the complaint for the reason that the buy-sell agreement by its terms is not enforceable under present circumstances and for the reason that delivery of the policy on any other basis is not permissible under either Oregon law or the Bankruptcy Code because of the debtor's insolvency.

■ Where the bankrupt, by virtue of paying premiums, is both the owner of a life insurance policy on another and is the beneficiary of the policy, the insurance policy is property of the estate even though the policy has not matured, has no cash surrender value, and is otherwise contingent. *Mutual Trust v. Wemyss,* 309 F.Supp. 1221, 1228 (D.Maine, 1970); *In the Matter of Fount-Wip,* 4 B.R. 424 (Bkrtcy.D.N.J., 1980); *International Life Ins. Co. v. Carroll,* 26 F.2d 369, 373 (D.W.D.Tenn., 1928); 4A *Collier on Bankruptcy,* § 70.23[7] pp. 334 (1978 Ed.). Although prior decisions under various state laws might be in conflict on the question of whether an unmatured insurance policy is executable property, 11 U.S.C. § 522(d)(7) and 11 U.S.C. § 541(a)(1) remove any doubt that life insurance on the life of another has sufficient existence or choateness at all times to be property of a bankruptcy estate. Earlier conflicting views are outlined in Riesenfeld, *Life Insurance and Creditors Remedies in the United States,* 4 U.C.L.A. Law Review 548 (1957). See also 6 A.L.R. 1173; 106 A.L.R. 596.

■ Under Oregon law, a shareholder cannot enforce a redemption or enforce a buy back agreement against a corporation or receive property of the corporation as a

shareholder while the corporation is insolvent and in some circumstances when the corporation lacks an earned surplus. *Field v. Haupert,* 58 Or.App. 117, 647 P.2d 952 (1982). Oregon law follows the trust fund theory of corporations and prohibits a corporation from making a distribution of its property or a return of capital to shareholders in any form while the corporation lacks sufficient assets cushioned by the company's stated capital to pay creditors in full. O.R.S. 57.035(1); 57.216(1); 57.221(1)(a); 57.551(1). See also *Baird v. McDaniel Printing Co.,* 25 Tenn.App. 144, 153 S.W.2d 135, 138 (1941); *Helburn Thompson Co. v. All Americas Mercantile Corp.,* 211 App. Div. 69, 206 N.Y.S. 652, 653 (1924). This rule of corporate priorities has been carried into the Bankruptcy Code under 11 U.S.C. § 541(e) and 544(b) and under the doctrines of equitable subordination in 11 U.S.C. § 510(c)(2) and *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

There is no rational basis independent of the buy and sell agreement to distinguish plaintiff's right to acquire a company-owned life insurance policy on his life from his right to acquire any other asset of the company. The insurance policy in this case was a key man policy which was wholly paid for by the debtor and which, in the normal course, the parties intended primarily to fund the buy out of a deceased shareholder's interest by the company. The beneficial interest in the policy constituted an asset of the company which was no different from any other asset of the company. The fact that the buy-sell agreement recognizes the right to acquire a company asset upon withdrawal does not dispense with the requirement that adequate consideration or "a reasonably equivalent value" be given in exchange if the transferor is insolvent at the time of the transfer. Both 11 U.S.C. § 548(a)(2) and O.R.S. Chapter 95 which is Oregon's version of the Statutes of Elizabeth governing fraudulent conveyances compel this conclusion.

There is no basis to separate plaintiff's right to acquire the company-held life insurance policy on his life from the rights to purchase or redeem stock under the shareholders' buy-sell agreement. The agreement tracks O.R.S. 57.406 of Oregon law and does not permit any payment for a shareholder's stock if the company is insolvent or lacks an earned surplus. See *Exhibit 4,* Paragraph 13 and related provisions in Paragraphs 9(a), 10 and Section 17(a)(2). In addition, the buy and sell agreement, by its terms, terminates upon the bankruptcy of the debtor or if the corporation ceases to do business or for the other reasons mentioned, ceases to be closely held. See Exhibit 4, Paragraph 17.

Plaintiff could not legally exercise the option to acquire the life insurance policy in this case and the debtor could not legally perform the option because the debtor was insolvent within the meaning of 11 U.S.C. § 101(26) before and after April 15, 1981 when he exercised the option. Execution of the option would violate Oregon law and 11 U.S.C. § 547 and Section 548 of the Bankruptcy Code.

Financial reports show a negative net worth ranging from approximately $145,-000.00 as of November 30, 1980 to $288,-000.00 as of April 30, 1981. In addition, the company lacked an earned surplus as early as November 30, 1979. Plaintiff was a shareholder and director of the debtor and, as such, was an insider within the meaning of 11 U.S.C. § 101(25)(A)(IV). The net worth of the company continued to decline during the plaintiff's period of active participation. Plaintiff had reasonable cause in spite of his disability to believe the debtor was insolvent at all relevant times.

Regardless of when plaintiff may have acquired any rights to the company-held life insurance policy and regardless of whether any rights to acquire the policy are viewed separately from or in conjunction with the repurchase of the stock, plaintiff, for the foregoing reasons, is not entitled to an order compelling the trustee to turn over the life insurance policy.