OPINION OF THE COURT
GIBBONS, Chief Judge:
The Estate of Roger Lellock (The Estate) appeals from the district court’s grant of summary judgment in favor of the United States of America, the Small Business Administration (SBA). The district court ruled that the SBA possesses a valid lien on the proceeds of Prudential Insurance Company Policy No. 25 905 442 which survived the Lellocks’ bankruptcy proceedings. The Estate contends that there was no “lien” on the policy within the meaning of 11 U.S.C. § 101(31) (Supp.III 1985) and that even if there was a lien, there was no “property” in existence at the time of the filing of the bankruptcy petition or within 180 days thereafter to which the alleged lien could attach. We find the Estate’s contentions without merit, and thus we affirm.
*187 I.
In August, 1980, Roger Lellock applied for a loan with the National Bank of the Commonwealth (National Bank). The National Bank asked the SBA to guarantee 90% of the $250,000 loan that the Bank was willing to make to Lellock and Lellock Motor Sales. The SBA agreed on the condition that Lellock provide, as collateral for the loan guarantee, an “[assignment of life insurance on Roger A. Lellock in the amount of $165,000.00 which shall be decreasing term unless SBA approved an existing permanent type insurance.” SBA Loan Authorization and Agreement at 2. The SBA approved as collateral a life insurance policy (No. 25 905 442) on Roger Lellock by Prudential Insurance Company of America which had previously been issued in March, 1980. Thereafter, in October, 1980 the National Bank made the loan to Lellock and he, in turn, assigned the proceeds of the insurance policy to the National Bank. Leah Lellock, Roger’s wife and the named beneficiary of the policy also signed the assignment. The assignment was absolute and transferred to the National Bank “all rights, benefits, and advantages to be had or derived therefrom including, without limiting the generality of the foregoing, the right at any time to exercise the loan provisions thereof or to surrender the same for its cash value even though the assignment may be for collateral security only.” Policy Assignment to National Bank at 1.
Lellock later defaulted on the loan and thus, in June, 1982, the National Bank requested the SBA to honor its loan guarantee. On July 12, 1982, the SBA paid $210,-464.74 to the National Bank, thereby purchasing the loan. This amount constituted 90% of the unpaid balance of the principal plus interest due the National Bank on the SBA-insured loan to Roger Lellock, trading as Lellock Motor Sales. Consequently, on October 5, 1982 the National Bank assigned the proceeds of the Prudential policy on Lellock to the SBA, transferring “all of its right, title and interest” in the loan and the insurance policy. Policy Assignment to SBA at 1.
On February 14, 1983, Roger and Leah Lellock filed a Petition for Relief under Chapter 7 of the Bankruptcy Code and listed the loan by the National Bank as a debt for $308,976.20. The Prudential Life Insurance policy on Lellock’s life, however, was not listed in the debtors' petition, either as security or as property, nor was the SBA named as one of their creditors. On August 19, 1983, the United States Bankruptcy Court for the Western District of Pennsylvania granted a discharge of the Lellocks’ debts.
The life insurance policy on Lellock’s life remained in effect with Lellock paying the annual policy premiums until his death on February 2, 1985. No other assignment of the policy was ever made. Upon Lellock’s death, both his widow, Leah and the SBA claimed the proceeds of the policy No. 25 905 442.
Thereafter, on May 1, 1985 the Estate of Roger Lellock brought this action against the Prudential Insurance Company of America, and the United States of America, the SBA, in the Court of Common Pleas of Allegheny County, Pennsylvania, claiming the proceeds of the insurance policy on Roger Lellock’s life. Upon the government’s motion, on May 23, 1985 the case was removed to the United States District Court for the Western District of Pennsylvania. On September 10, 1985 the district court dismissed the complaint as to Prudential upon its payment of the policy proceeds to the Clerk of the Court. On May 8, 1986 the district court granted summary judgment in favor of the United States of America, the SBA. It held that although the underlying debt that the assignment of the policy secured was discharged, the lien against it survived the Lellocks’ bankruptcy discharge.
II.
On appeal, the Estate’s contentions are twofold: 1) there was no “lien” against the life insurance policy within the meaning of 11 U.S.C. § 101(31); and 2) even if there was a lien, there was no “property” to *188 which the alleged lien could attach because the insurance policy proceeds did not come into existence until Lellock’s death which was not within 180 days of the filing of the bankruptcy petition. Thus, the Estate seemingly argues that the assignment of the insurance policy to the SBA was extinguished when the underlying debt was extinguished at the bankruptcy discharge. We disagree.
The Bankruptcy Code defines a lien as a “charge against or interest in property to secure payment of a debt or performance of an obligation.” 11 U.S.C. § 101(31) (Supp.III 1985). The Estate urges that because the underlying debt was extinguished, Lellock was no longer obligated to make any payment to the National Bank or to the SBA and thus, there was no lien against the Prudential insurance policy. This argument, however, ignores the line of bankruptcy cases which hold that although an underlying debt is discharged in bankruptcy, the lien created before bankruptcy against property to secure that debt survives. See United Presidential Life Ins. Co. v. Barker, 31 B.R. 145 (N.D.Tex. 1983) and the cases cited therein. We agree with the district court’s analysis in Estate of Roger Lellock v. Prudential Insurance Company of America, No. 85-1242 (W.D.Pa. May 8, 1986) on this point. Section 506(d) controls and states:[1]
(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.
11 U.S.C. § 506(d) (Supp.III 1985).
Additionally, the legislative history of the original section 506(d) specifically states that “subsection (d) permits liens to pass through the bankruptcy case unaffected.” H.R.Rep. No. 595, 95th Cong., 1st Sess. 357 (1977), reprinted in 1978 U.S. Code Cong. & Admin.News, 5963, 6313. Similarly, section 522 provides in relevant part:
(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, ... before the commencement of the case, except—
(2) a lien that is—
(A) not avoided under section 544, 545, 547, 548, 549, or 724(a) of this title;
(B) not voided under section 506(d) of this title;
Also, the legislative history of section 522 states:
The bankruptcy discharge will not prevent enforcement of valid liens ... on nonexempt property as well as on exempt property.
H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News, 5963, 6317; see also S.Rep. No. 989, 95th Cong., 2d Sess. 76, reprinted in 1978 U.S.Code Cong. & Admin.News, 5787, 5862.
It is undisputed that in the instant case, the Lellocks did not list the proceeds of the life insurance policy as part of their estate in bankruptcy. United Presidential is directly in point.[2] Here, as in United Presi *189 dential, the debtor assigned a life insurance policy to a bank as security for a debt. Thereafter, the debtor filed for bankruptcy under Chapter 7 and his debts were discharged. Upon the debtor’s death both his widow and the bank claimed the proceeds of the life insurance policy. The United Presidential court held that because neither the debtors nor the bank requested allowance or disallowance of the bank’s lien, it “passed through bankruptcy unaffected.” United Presidential, 31 B.R. at 147. While a minority of opinions have held that prefiling liens of secured creditors which are not disallowed or avoided in bankruptcy proceedings do not survive a bankruptcy discharge of the underlying debt (see In re Ray, 26 B.R. 534 (Bankr.D. Kan.1983); In re Williams, 9 B.R. 228 (Bankr.D.Kan.1981)) we decline to follow this line of reasoning as it is clearly repugnant to bankruptcy policy. See 3 Collier on Bankruptcy § 524.01, n. 176 (15th ed. 1983). We instead follow the majority of courts which hold that the Bankruptcy Code and its legislative history plainly establish the better rule of law — that valid liens that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt.[3] See, e.g., In re Landmark, 48 B.R. 626 (Bankr.D.Minn.1985); In re Atoka Agricultural Systems, Inc., 39 B.R. 474 (Bankr.E.D.Va.1984); United Presidential Life Ins. Co. v. Barker, 31 B.R. 145 (N.D.Tex.1983); In re Weathers, 15 B.R. 945 (Bankr.D.Kan.1981).
Further, the Estate argues that neither as of the date of the debtor’s bankruptcy discharge, nor as of 180 days of the filing of the bankruptcy petition, did any property exist to which the lien could attach. In essence, the Estate contends that because the proceeds of a life insurance policy are not payable until death, the property interest in those proceeds does not exist until then. Consequently, the real issue is whether an unmatured life insurance policy constitutes property within the meaning of the Bankruptcy Code. We hold that an insurance policy is property of the estate within 11 U.S.C. § 541(a)(1) (1982 & Supp.III 1985) “even though the policy has not matured, has no cash surrender value and is otherwise contingent.” In re McCulloch & Son, Inc., 30 B.R. 7, 8 (Bankr.D.Or.1983); accord In re Hettling, 175 F. 65, 66 (2d Cir.1909); Mutual Trust Life Ins. Co. v. Wemyss, 309 F.Supp. 1221, 1228 (D.Me.1970); see also Bank of Minden v. Clement, 256 U.S. 126, 128, 41 S.Ct. 408, 65 L.Ed. 857 (1921); Lincoln Nat’l Life Ins. Co. v. Scales, 62 F.2d 582, 584-85 (5th Cir.1933). Thus, a lien could certainly attach to the unmatured policy.
Similarly, the Estate’s argument that the Lellocks did not have a property interest in the life insurance policy within the meaning of 11 U.S.C. § 541(a)(5)(C) but rather acquired it after 180 days of the filing of the petition, thereby triggering 11 U.S.C. § 552(a), is without merit. Section 541(a)(5)(C) of the Bankruptcy Code states that, inter alia, the following is property of an estate:
*190 (5) An interest in property that would have been property of the estate if such interest had been an interest of the debt- or on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
******
(C) as a beneficiary of a life insurance policy or of a death benefit plan.
11 U.S.C. § 541(a)(5)(C) (1982 & Supp.III 1985). Obviously, this section does not create an interest on the part of the debtor but rather includes as part of the estate a debtor’s contingent interests — as beneficiary — which mature within 180 days of the filing of the petition.[4]
The absolute assignment of the life insurance policy to National Bank on October 81, 1980 transferred all of the Lellocks’ right, title and interest in the policy. Thus, the SBA had title to the policy which most certainly constitutes an “interest” in the property. Indeed the fact that the policy is the property of the SBA [5] obviates the need for the policy to pass through the Lellocks’ bankruptcy at all. See Lincoln Nat’l Life Ins. Co. v. Scales, 62 F.2d 582, 583-84 (5th Cir.1933); In re Cooper’s Estate, 28 F.2d 438, 439-40 (D.Md.1928); 4A Collier on Bankruptcy § 70.23[5] (14th ed. 1978). Consequently, we find that as of the date of the filing of the petition and throughout the 180 days thereafter, the Lellocks had no interest — contingent or otherwise — in the life insurance policy. Because the policy was never reassigned to them, they never reacquired an interest in it.
III.
We conclude that the lien on the life insurance policy (No. 25 905 442) survived the Lellocks’ bankruptcy discharge and thus the SBA was entitled to summary judgment as a matter of law. The judgment will therefore be affirmed.

. Section 506(d) was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333. Before the 1984 amendments, section 506(d) read as follows:
To the extent that a lien secures a claim against a debtor that is not an allowed secured claim, such lien is void, unless
(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title.
11 U.S.C. § 506(d)(l)(1982).
The instant case is governed by the 1984 version that is effective as to cases filed 90 days after the date of enactment, July 10, 1984. See section 553(a) of Pub.L. No. 98-353, 11 U.S.C. § 101 note (Supp.III 1985). The changes in § 506(d), however, were not substantive in nature (see In re Everett, 48 B.R. 618 (Bankr.E.D. Pa. 1985)) and thus, the result in the present case would be the same under either version.

. The Estate attempts to distinguish United Presidential by pointing to the fact that there, unlike in the present case, the discharged creditor con *189 tinued to pay the premiums on the life insurance policy at issue. We see no relevancy to this distinction. The Lellocks might arguably be entitled to reimbursement for the premiums paid but not to the proceeds that they assigned away. See, e.g., In re Fount-Wip Distributors, Inc., 4 B.R. 424, 425, 428 (Bankr.D.N.J.1980).
The Estate also distinguishes the cases cited in United Presidential as dealing with liens against tangible, "existing” property of the debtor’s estate. See Estate’s Brief at 11-12. As we demonstrate infra, we conclude that an interest in a nonmatured life insurance policy is an “interest” cognizable under the Bankruptcy Code.

. Equity also dictates this result. The SBA paid $210,464.74 to the National Bank upon the Lellocks’ default on their loan. If the debtors had listed the life insurance policy as collateral for the loan or as an asset of their estate in bankruptcy, the policy would not have been considered exempt property (see 11 U.S.C. § 522(d)(7) (1982 & Supp.III 1985); 42 Pa.Cons. Stat.Ann. § 8124(c) (Purdon 1982 & Supp. 1986)). Further, the Lellocks did not pursue the appropriate remedy in bankruptcy. They failed to seek a disallowance of the SBA’s claim to the policy during their bankruptcy proceeding. To rule that the Estate is now entitled to the proceeds of the insurance policy would allow the Lellocks to achieve by omission what they failed to pursue in bankruptcy — the conversion of the non-exempt policy to themselves.

. Section 552(a) and (b) provide:
(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case. (b) Except as provided in Sections 363, 506(c), 522, 544, 545, 547 and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing based on the equities of the case, orders otherwise.
11 U.S.C. § 552(a), (b) (1982 & Supp.III 1985).

. This was a nonpreferential transfer. See 11 U.S.C. § 547 (1982 & Supp.III 1985).